(20)

**FILED**

MAY 1 4 2013

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re                          )   Case No. 12-92459-E-7
                               )   Docket Control No. RHS-1
LINDA JOYCE ALLEN,             )
                               )
              Debtor.          )
_____)

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**
**ORDER TO SHOW CAUSE - JPMORGAN CHASE BANK, N.A.**

On March 7, 2013, the court conducted a hearing on an Order to Show Cause why corrective sanctions should not be imposed on JPMorgan Chase Bank, N.A. ("Creditor") for failure to comply with the prior order of this court to appear and explain the terms of a reaffirmation agreement that Creditor presented to this court for approval.  The Order to Show Cause was served on Creditor by the Clerk of the Court through the Bankruptcy Noticing Center on February 4, 2013.  Service was made on this federally insured financial institution at the addresses required by Federal Rule of Bankruptcy Procedure 7004(h).  Certificate of Service, Dckt. 46.

The prior order of the court, with which Creditor failed to comply, was for Creditor to appear at a January 17, 2013 hearing to

1  approve a proposed reaffirmation agreement.  The prior order was
2  served on Creditor at the addresses required by Federal Rule of
3  Bankruptcy Procedure 7004(h).  This is a core proceeding pursuant
4  to 28 U.S.C. §§ 1334 and 157(b), and the referral of bankruptcy
5  cases and all related matters having been made to the bankruptcy
6  judges in this District.  E.D. Cal. Gen. Orders 182, 223.

### REAFFIRMATION AGREEMENT PRESENTED TO COURT

The court has been presented with a reaffirmation agreement executed between Linda Allen, the *pro se* Chapter 7 debtor in this case, ("Debtor") and Creditor.  The terms of the agreement are for Debtor to reaffirm a debt in the amount of $11,537.16, which is to be repaid over a period of 57 months, amortized with interest of 21.5% per annum ("Reaffirmation Agreement").  The collateral for this debt is a 2007 Toyota Camry, which is asserted to have a value of $11,000.00.  The monthly payments for Debtor would be $322.24. No adjustments to the interest rate or amount of the debt from the pre-petition amounts for those items have been made under the Reaffirmation Agreement.

**Value of Vehicle**

Creditor has presented information for the value of the vehicle securing its claim in the form of a Kelley Blue Book Report.  The Kelley Blue Book Report values a 2007 Toyota Camry in excellent condition at $13,331.00.  No information is provided as to the actual condition of the vehicle securing this debt. Commonly in bankruptcy cases, vehicles are not in excellent condition, but suffer from the real-life day-to-day events (dings, stains, tears, scratches, and damages) of the average consumer. Additionally, consumers who ultimately need to file bankruptcy

2

1 | often have significant deferred maintenance on their vehicle.

2 | **Inferences From 21.5% Interest Rate**

3 | The court is concerned when it is presented with this
4 | Reaffirmation Agreement for a six model-year-old vehicle for which
5 | the reaffirmed debt is based on an excellent condition retail sales
6 | price and Creditor has extracted a 21.5% interest rate from Debtor.
7 | Such a high interest rate is often a declaration by a creditor that
8 | a debtor cannot make the required payments.   While Debtor is
9 | responsible for making her own economic decisions, Creditor has
10 | sought to enlist the assistance of this court in placing a 21.5%
11 | interest rate millstone around this consumer debtor's neck.

12 | It appears from the information provided that Creditor has a
13 | reaffirmation policy which is not premised on entering into
14 | reaffirmation agreements with debtors who have a reasonable ability
15 | to pay the debt.   It is necessary and proper for the court to
16 | require Creditor to appear and provide the court with information
17 | as to why and how this is reasonable, necessary, and consistent
18 | with reaffirmation of debts under the Bankruptcy Code for the court
19 | to put its stamp of approval on the Reaffirmation Agreement.

20 | **FAILURE OF CREDITOR TO APPEAR AT THE**
21 | **JANUARY 17, 2013 HEARING AS ORDERED BY THE COURT**

22 | Because of the issues raised by Creditor presenting this
23 | Reaffirmation Agreement, which burdens the post-discharge Debtor
24 | with a 21.5% interest rate for debt secured by a six model-year-old
25 | vehicle, the court ordered Creditor and counsel to appear at a
26 | reaffirmation hearing on January 17, 2013.   Order, Dckt. 32.

27 | Creditor failed to appear on January 17, 2013, as ordered by
28 | the court.   The court infers from this failure to appear and the
response to this Order to Show Cause that Creditor, who has not

3

missed other appearances when it is seeking relief from the court or defending itself from a proceeding commenced by a debtor, intentionally chose not to appear to avoid providing an explanation as to why it was requesting the court approve a reaffirmation agreement with a 21.5% interest rate for this consumer debtor.

**Order to Show Cause, Order to Appear on March 7, 2013**

The court issued this Order to Show Cause for Creditor to appear and to present to the court arguments and evidence in support of the court approving the Reaffirmation Agreement.  The court ordered Creditor to provide the court with its policies concerning reaffirmation of debts in Chapter 7 cases and an analysis of how this debt and a 21.5% interest rate are consistent with such policies.  The court further ordered Creditor to show cause why the court should not order, or conduct an evidentiary hearing, concerning corrective sanctions to be imposed.

**BANKRUPTCY COURT AUTHORITY TO ISSUE CORRECTIVE SANCTIONS**

Bankruptcy courts have jurisdiction and the authority to impose sanctions, even when the bankruptcy case itself has been dismissed.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *Miller v. Cardinale (In re DeVille)*, 631 F.3d 539, 548-49 (9th Cir. 2004).  The bankruptcy court also has the inherent civil contempt power to enforce compliance with its lawful judicial orders.  *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir. 2009); *see also* 11 U.S.C. § 105(a).

Federal Rule of Bankruptcy Procedure 9011 imposes obligations on both attorneys and parties appearing before the bankruptcy court.  This Rule covers pleadings filed with the court.  If a party or counsel violates the obligations and duties imposed under

4

Rule 9011, the bankruptcy court may impose sanctions, whether pursuant to a motion of another party or *sua sponte*.    These sanctions are corrective, and limited to what is required to deter repetition of conduct of the party before the court or comparable conduct by others similarly situated.    Fed. R. Bankr. P. 9011(c)(2).

A bankruptcy court is also empowered to regulate the practice of law in the bankruptcy court. *Peugeot v. U.S. Trustee (In re Crayton)*, 192 B.R. 970, 976 (B.A.P. 9th Cir. 1996).    The authority to regulate the practice of law includes the right and power to discipline attorneys who appear before the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also Lehitine*, 564 F. 3d at 1058.

The primary purpose of a civil contempt sanction is to compensate losses sustained by another's disobedience of a court order and to compel future compliance with court orders. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192 (9th Cir. 2003). The contemnor must have an opportunity to reduce or avoid the fine through compliance. *Id.* A federal court's authority to regulate the practice of law is broader, allowing the court to punish bad faith or willful misconduct. *Lehitine*, 564 F.3d at 1058.    However, the bankruptcy court cannot issue punitive sanctions pursuant to its power to regulate the attorneys or parties appearing before it. *Id.* at 1059.

**CREDITOR'S RESPONSE TO ORDER TO SHOW CAUSE**

Creditor responded to the Order to Appear and Show Cause on February 21, 2013.    Creditor asserts that Debtor indicated in her Statement of Intention that she desired to reaffirm her secured

5

1    debt to Creditor. Based on that intention, Creditor prepared and
2    mailed the Reaffirmation Agreement to Debtor (who is prosecuting
3    her bankruptcy case in *pro se*). Creditor asserts it uses only the
4    original terms and conditions of the contract, as well as the
5    outstanding balance, for all reaffirmation agreements, irrespective
6    of the value of the collateral or whether the terms of loan appear
7    reasonable for a consumer.

8    Creditor states it received the executed Reaffirmation
9    Agreement from Debtor, who only completed her portion of the
10    agreement and did not request that any of the original terms or
11    conditions of the contract be modified or changed. At the hearing,
12    Creditor advised the court that it does not negotiate or alter any
13    terms from the original contract for any reaffirmation agreement
14    for which it seeks approval from the bankruptcy court.

15    Creditor asserts that it did not appear at the December 2012
16    Reaffirmation Hearing because the Notice provided did not require
17    Creditor to appear at this hearing. Creditor is correct on this
18    point, as the Notice states that the Debtor is to appear on
19    December 19, 2012. Dckt. 24. Nevertheless, the court issued a
20    separate order for Creditor to appear at the December 19, 2012
21    hearing as well. Order to Appear, Dckt. 25. The Bankruptcy
22    Noticing Center served this Order on Creditor at the street address
23    listed on the proof of claim and to the attention of the person who
24    filed the proof of claim for Creditor. Dckt. 25.

25    Creditor argues that the reaffirmation of a debt is a
26    voluntary agreement between the parties, pursuant to 11 U.S.C.
27    § 524(c). Creditor states that other than to mail the
28    Reaffirmation Agreement to her and receive back the executed

6

agreement, it had no other communications with Debtor. Creditor also states that without question, issue or alteration, Debtor returned the Reaffirmation Agreement to Creditor, which it then filed with the Court. Creditor further states that its employees did not conduct any independent analysis of the information completed by the Debtor in the signed Reaffirmation Agreement.

Based on this explanation, Creditor contends that it acted in good faith and there are no facts indicating it acted in bad faith. Creditor surmises that Debtor could have chosen to decline to reaffirm on the terms sent or to contact Creditor with a counterproposal with modification of the core terms, but failed to so do. In pressing this argument, Creditor is essentially saying that a least sophisticated consumer debtor gets what he or she deserves for entering into a reaffirmation agreement with Creditor.

Creditor believes that the court must conduct a strict review of the Reaffirmation Agreement pursuant to 11 U.S.C. § 524(d) since the Debtor is unrepresented by counsel. Creditor opines that reaffirmation agreements are disfavored, and that even though one may be fully executed, it may not be approved if the court deems it not be in the best interest of the debtor or to cause undue hardship to the debtor.[1]

Creditor argues that it is not specifically required by the Bankruptcy Code to independently review or analyze whether entering into a reaffirmation agreement is in a debtor's best interest or

---

[1] Interestingly, this court does not "disfavor" reaffirmation agreements, but believes that they often represent the first step of a debtor's fresh start. Many debtors do not appreciate that they can negotiate a commercially fair credit rate for a loan or that they can walk away from credit someone is offering them. Debtors also learn that there is more than one source of credit and a loan is not a "this is your only reasonable option - you must take it" proposition.

7

1 | whether the agreement would cause undue hardship. Creditor further
2 | argues that the Bankruptcy Code does not require a creditor to
3 | offer or propose specific terms and conditions or to modify
4 | original contract terms. Creditor contends that although the court
5 | did not approve the Reaffirmation Agreement, such non-approval does
6 | not mean that Creditor did not act in good faith or that it
7 | violated any provision of 11 U.S.C. § 524.

8 | Creditor's Response requests that the court not issue any
9 | sanctions, asserting that Creditor's failure to appear at the
10 | December 19, 2012 and the January 17, 2013 hearings was caused by
11 | mere inadvertence and excusable mistake. Creditor contends that it
12 | virtually never appears at any reaffirmation hearings, and if its
13 | attendance is required, the clerk of the bankruptcy court provides
14 | a personal call to Creditor advising it of the time and date of the
15 | hearing.

16 | Creditor asserts that because of its usual lack of
17 | participation in the approval process, it simply failed to
18 | appreciate the seriousness of the orders issued by the court.
19 | Creditor provides the declarations of Deborah Kirsling and Maritsa
20 | Sanchez to support the proposition that Creditor's failure to
21 | appear was mere inadvertent error.

22 | As discussed below, the court is baffled by a sophisticated
23 | party who believes that it is entitled to a personal call from the
24 | clerk of the court when it is required to appear at a hearing.
25 | Further, how the "Bankruptcy Specialists" (self-proclaimed by
26 | Creditor) were unable to understand orders of the court requiring
27 | Creditor to appear at a specific date and time.

28 | ///

8

## DISCUSSION

The Response of Creditor is disconcerting and incomplete. Creditor has failed to address the issues raised by the court. The court specifically requested:

(1) Creditor to explain and present arguments in support of the court approving a reaffirmation agreement with a 21.5% interest rate and how this is reasonable, necessary, and consistent with the reaffirmation of debts under the Bankruptcy Code; and

(2) Creditor to provide the court with policies concerning reaffirmation of debts on Chapter 7 cases and an analysis of how this debt and a 21.5% interest rate are consistent with such policies.

In response, Creditor essentially argues only that the Reaffirmation Agreement between the parties was voluntary, not something that it forced on the Debtor or that Creditor was forced to allow the Debtor. The court does not dispute this. The concern lies in the terms of the agreement, specifically the 21.5% interest rate proposed by Creditor. As stated earlier, such an interest rate appears to be a declaration by Creditor that the Debtor cannot make the payments and that a default is anticipated (warranting the high interest rate). Further, ensconcing the 21.5% interest rate in the Reaffirmation Agreement appears consistent with a policy of Creditor to perpetuate the pre-petition financial devastation which caused the consumer to file a Chapter 7 bankruptcy case in the first place.

Creditor fails to explain how its policies and the Reaffirmation Agreement before the court are reasonable, necessary, and consistent with the reaffirmation of debts under the Bankruptcy

Code.   Additionally, Creditor fails to address how and why its policy of requiring such high interest rates does not create agreements that are destined to result in significant deficiencies and generate large interest income returns for Creditor on those deficiencies.

Creditor's explanation, as amplified at oral argument, is that its employees, without thought, merely process paperwork for outstanding loans and reaffirmations (which are in the nature of a new extension of credit).  Creditor is only willing to reaffirm a debt based on the original terms of the contract – without regard to whether it is an objectively reasonable consumer transaction and consistent with a debtor obtaining a "fresh start" under the Bankruptcy Code.

While it is Creditor's right to extend credit as it deems in its best financial interests, the court finds this contention at best demonstrates a failure to appreciate the seriousness of extending credit to debtors, especially a *pro se* debtor attempting to prosecute his or her own bankruptcy case.   It shows a belief by Creditor that bankruptcy judges just mindlessly bless whatever onerous credit terms that Creditor is able to impose on a consumer debtor.   Further, it demonstrates continuing indifference by the Creditor to the federal judicial process, orders of the court, and any obligation to act reasonably and in good faith in a consumer debtor transaction.

Creditor's explanation as to why it failed to appear as ordered by the court and its policies concerning processing court orders causes the court grave concerns.  Creditor acknowledges that its "Bankruptcy Specialist" received two orders to appear.

10

Creditor does not dispute that the second order was served on Creditor at the offices required by Federal Rule of Bankruptcy Procedure 7004(h), the court using addresses listed with the FDIC and California Secretary of State.

Creditor argues that it was mere "inadvertence" that "Bankruptcy Specialists" employed by Creditor could not understand that he or she (1) had received an order from the court and (2) that the order required some action to be taken by Creditor. Though afforded an opportunity, Creditor has not provided the court with its policies and procedures for "Bankruptcy Specialists" when they receive orders from the court titled as follows:

**ORDER FOR CREDITOR TO APPEAR**
**Approval of Reaffirmation Agreement**

and

**ORDER FOR CREDITOR TO APPEAR**
**AND**
**ORDER TO SHOW CAUSE**
**Approval of Reaffirmation Agreement**
**Failure to Appear Pursuant to Order of the Court**

Orders, Dckts. 32, 44. Creditor contends that several of its employees, though they received the orders, failed to review the contents of the two Orders issued by the court. In substance, it is contended that ignorance on the part of Creditors' employees, including its "Bankruptcy Specialists,"[2] led to them not reading or

---

[2] Creditor, and not the court, has designated these employees as "Bankruptcy Specialists." Ballentine's Law Dictionary states the following in its definition of non-medical specialists. "In the broad sense, any person who concentrates in practice upon a division of a profession, occupation, or calling." BALLENTINE'S LAW DICTIONARY (3RD ED. 2010). The term "specialist" is defined in the Merriam-Webster Dictionary to include "one who specializes in a particular occupation, practice, or branch of learning." THE MERRIAM-WEBSTER DICTIONARY AND THESAURUS, available at http://www.merriam-webster.com (May 13, 2013).

Given this self-designated appellation of "Bankruptcy Specialist"

1  understanding orders of the court.

2      Creditor provides the declaration of Deborah S. Kirsling,
3  Senior Bankruptcy Specialist, who testifies that Creditor's
4  employees did not fully review the contents of the orders and that
5  she did not see either of the orders until after January 18, 2013.
6  Dckt. 49. Strikingly absent from Ms. Kirsling's testimony is what
7  policies and procedures are in place for Creditor's employees to
8  review orders from a court and action to be taken by those
9  employees. Apparently, Creditor places little significance on
10  orders issued by a court, leaving it to each "Bankruptcy
11  Specialist" to divine what orders are worth reading and which may
12  be ignored.

13  Further, Maritsa Sanchez, the Bankruptcy Specialist responsible
14  for handling this Debtor's bankruptcy case, asserts she does not
15  have any recollection of reviewing or receiving either Order, both
16  of which were served directly on her. Declaration, Dckt. 50. No
17  reason is given by Ms. Sanchez why a "Bankruptcy Specialist" at one
18  of the largest financial institutions in the country would not have
19  reviewed orders from a court sent directly to her. No testimony is

21  to the persons employed by Creditor to review orders of the court, the
    court is led to believe that each of these employees has been trained
22  to fully know and understand the importance of a document from the
    court titled **"ORDER."** Such specialized knowledge and training cuts
23  against Creditor's argument that these employees did not or could not
    know what was meant by the document titled **"ORDER"** and which states,

25      **IT IS ORDERED** that JPMorgan Chase Bank, N.A. through a
        senior management representative with personal knowledge of
26      the Bank's policies and procedures for the reaffirmation of
        automobile secured debts and its counsel fo choice shall
27      appear at **1:35 p.m. on January 17, 2013,** at the United
        States Bankruptcy Court for the Eastern District of
28      California (Modesto Division), 1200 I Street, Suite 4,
        Modesto, California, Telephonic Appearances Permitted.
        [emphasis in original]

provided as to the procedures maintained by Creditor to reasonably ensure that orders sent to its "Bankruptcy Specialist" are properly delivered to that person.  Presumably, Creditor does have policies and procedures, not disclosed to the court, in place for the routing of mail and orders, and does not leave those determinations to be made on an *ad hoc* basis by its mail room staff.

In fact, Creditor contends that it was not consciously aware of the matter until Timothy J. Silverman, one of Creditor's attorneys who regularly appears as outside counsel for Creditor, learned of it after the January 17, 2013 hearing.  This occurred when, after Creditor failed to appear at the time specified for the January 17, 2013 hearing, a deputy clerk of the court contacted another attorney, Kristi Wells, who regularly represents Creditor on other matters and requested that Ms. Wells make a courtesy appearance for her client at that time.

Ms. Wells made the courtesy appearance for Creditor and the court on January 17, 2013.  Upon hearing the court's concern over Creditor ignoring the order to appear concerning the Reaffirmation Agreement, Ms. Wells stated she would communicate the court's concerns to the General Counsel's office for Creditor.  Further, she would communicate that the court would be issuing an Order to Show Cause for the failure to appear.  It appears that only because the court contacted another attorney who represents Creditor (quite possibly the personal phone call Creditor expects if it is to appear in court), and such counsel extended the courtesy to Creditor and court to appear at the hearing, that an employee at Creditor actually ultimately read the Orders from the court.

///

**CREDITOR'S ACTIONS ARE INCONSISTENT
WITH ITS PUBLIC STATEMENTS**

The court is presented with an initial failure to comply with an order of the court and a response that Creditor's "Bankruptcy Specialists" and other personnel in its offices could not understand that a document tilted "**ORDER FOR CREDITOR TO APPEAR**" required some action and response by Creditor.   Further, Creditor has a policy to generate reaffirmation agreements without regard to whether they are consistent with the spirit and policy of a fresh start under the Bankruptcy Code, or whether such terms are commercially reasonable for a consumer credit transaction.   Left casting about due to Creditor's non-responsiveness, the court reviewed public statements made by Creditor and its holding company, JPMorgan Chase & Company.[3]

On its public web site, JPMorgan Chase & Co. makes the following statement:

Corporate Responsibility

At JPMorgan Chase, corporate responsibility is about what we do every day in our businesses and how we do it. **We are committed** to managing our businesses **to create value for our consumer** and corporate **clients** as well as our shareholders, communities and employees and to being a responsible corporate citizen.

Our commitment to corporate responsibility extends to every facet of our business – in both good economic times and bad. **We are proactively assisting customers** and clients as well as supporting efforts to achieve financial market stability **throughout these unprecedented economic times.** As we look to the future, **we remain committed to doing business in a responsible way**, to being responsible stewards of shareholder capital and to being a good corporate partner to our communities across the globe.

---

[3]   The FDIC lists JPMorgan Chase & Company as the bank holding company of JPMOrgan Chase Bank, N.A.

14

1  *Corporate Responsibility, JPMorgan Chase & Co.,*
2  http://www.jpmorganchase.com/corporate/Corporate-Responsibility/
   corporate-responsibility.htm (May 13, 2013) (Emphasis Added).
3  While the court does not accept or use this statement as
4  "testimony" as to the truthfulness of what is stated by JPMorgan
5  Chase & Company, this is the statement which Creditor's holding
6  company presents to the public.
7        Creditor also maintains a public web site and has made its own
8  statement to the public that its actions are always in the best
9  interests of its customers.  It states that Creditor will,

10        Be field- and client-driven, consistently delivering the
          best products and services in a cost-effective way. **We**
11        **must act in the customer's best interest, not once in a**
          **while, but consistently.**  This means offering outstanding
12        products and services and being helpful, courteous and
          quick to follow up.  We need to be keenly aware of the
13        competitive landscape and quick to act.  The field - **the**
          **employees closest to the customer - should drive this**
14        **process and have ample resources and authority to be the**
          **best at serving customers.**  Our strength resides in the
15        field.    We must exceed customers' expectations and
          constantly make it easier for them to do business with
16        us.

17  Our Business Principles, JPMorgan Chase & Co.,
    http://www.jpmorganchase.com/corporate/About-JPMC/
18  document/business_principles.pdf (May 13, 2013) (emphasis added).

19        While this court does not believe that a creditor is the
20  "keeper" of its customers, the concepts of good faith and fair
21  dealing bring a basic level of decency to conduct even between
22  lenders and borrowers, creditors, and debtors.[4]

23  ——————————————
24        [4] Recognizing the natural tension which exists between lenders
    and borrowers, and debtors and creditors, both California and the
25  United States have enacted laws governing these relationships.  These
    laws are intended to place obligations on both parties to a consumer
26  credit transaction and provide a mechanism for a creditor to recover
    obligations from consumers who have the ability to pay but refuse to
27  so do.  Conversely, these laws also protect consumers and provide a
    mechanism to assert rights against improper conduct by creditors and
28  debt collectors in attempting to extract payments from consumers.
    Examples include (1) the California Rosenthal Fair Debt Collection
    Practices Act (Cal. Civ. Code §§ 1788 et seq.), California Rees-

1    The Response by Creditor is inconsistent with its public
2  statements and generally accepted creditor conduct in bankruptcy
3  cases.  Creditor states that it has no policies and procedures by
4  which it determines whether an interest rate for reaffirmation of
5  a debt secured by a vehicle — in this case a 21.5% interest rate —
6  is reasonable, could be presented in good faith, and should
7  properly be approved by the court.  Rather, the "policy," to the
8  extent one exists, is that the interest rate from the contract is
9  placed without thought in a reaffirmation agreement, and the
10  executed reaffirmation agreement is automatically and mindlessly
11  presented to the court.

12    From the information provided, it appears that Creditor has in
13  place a policy designed to ensure that consumers are saddled with
14  unreasonable loans for which the consumer is all but assured to
15  default in payments.  This all but guarantees to destroy a debtor's
16  fresh start provided under the Bankruptcy Code.  *Marrama v.*
17  *Citizens Bank*, 549 U.S. 365, 367 (2007) ("The principal purpose of
18  the Bankruptcy Code is to grant a 'fresh start' to the honest but
19  unfortunate debtor.' *Grogan v. Garner*, [citation omitted].")  For
20  the Reaffirmation Agreement presented to the court, prior to
21  default on the reaffirmed debt, Creditor would squeeze as much
22  interest (generated by the 21.5% interest rate) as possible from

---

24  Levering Act (Cal. Civ. Code §§ 2981 et seq.), California Unruh Act
25  (Cal. Civ. Code §§ 1801 et seq.), California Fair Credit Reporting Act
    (Cal. Civ. Code §§ 1785.1 et seq.), Federal Fair Debt Collection
    Practices Act (15 U.S.C. §§ 1692 et seq.), Federal Fair Credit
26  Reporting Act (15 U.S.C. §§ 1681 et seq.), Federal Consumer Protection
    Act (15 U.S.C. 1601), Federal Trade Commission Act (15 U.S.C. §§ 41 et
27  seq.), and Regulations enacted by the Consumer Financial Protection
    Bureau (12 C.F.R. §§ 1002.1 et seq.).  Each of these require conduct
28  of the consumer, lender, debtor, creditor, and collector that is more
    than merely printing and signing forms without thought or review.

1  the consumer before the predestined default.   Then, after the
2  default, Creditor can sue the consumer, obtain a judgment, and use
3  the state enforcement of judgment proceeds to suck whatever
4  financial marrow remains in the consumer's economic bones (with all
5  financial flesh having already been stripped from the consumer).

6      While the court believes that corrective sanctions for
7  Creditor's failure to appear as ordered by the court are
8  appropriate with respect to the Reaffirmation Agreement filed with
9  the court and failure to appear as ordered by the court, the
10 magnitude of corrective sanctions required for a financial
11 institution of this size would inevitably lead to a dispute before
12 the District Court as to whether the sanctions are corrective or
13 merely disguised punitive sanctions.   Whether this court requires
14 the payment of corrective sanctions of $1.00 or $100,000.00, such
15 would be of small financial moment to Creditor.   The court was
16 presented with a statement by the Debtor that she has lost $100.00
17 in earnings in having to make two appearances relating to this
18 matter.

19     For corrective sanctions, the court orders Creditor to pay a
20 sanction of $1.00 to the Clerk of the United States Bankruptcy
21 Court and $100.00 to Linda Allen, the Debtor.   The $1.00 payment to
22 the Clerk of the Court and the $100.00 payment to Linda Allen shall
23 be made on or before May 30, 2013.   Upon payment, Creditor shall
24 file with the court a notice of payment, a chamber's copy of which
25 shall be delivered to Janet Larson, the Courtroom Deputy for
26 Department E of the United States Bankruptcy Court, Sacramento
27 Chambers.

28     Creditor asserts that this conduct is merely an aberration,

17

1  with the issues highlighted by the court causing Creditor to review
2  its policies and procedures. If true, then the following will be
3  of little moment to Creditor. If not, then other agencies can take
4  such corrective action as they deem appropriate. As discussed
5  above, the California Legislature and Congress have enacted
6  legislation to provide rights and obligations for creditors,
7  lenders, debtors, and creditors. Several levels of regulatory
8  enforcement exist for each of these, ranging from local district
9  attorneys to the Federal Trade Commission and Consumer Financial
10 Protection Bureau.

11      The court directs the Clerk of the Court to forward copies of
12 this Ruling to the following Local, State, and Federal offices and
13 agencies for consideration in light of any ongoing investigations
14 or complaints. The court is satisfied that if greater problems
15 exist with Creditor, those matters will be in front of these
16 offices and agencies. To the extent this is an aberration, these
17 offices and agencies will find this Ruling of little interest,
18 focusing on other persons who require action to comply with
19 existing law. This information copies of this Ruling shall be
20 forwarded by the Clerk of the Court to the following offices and
21 agencies:

22          August B. Landis, Acting U.S. Trustee, Region 17
            Antonia Darling, Asst. U.S. Trustee
23          501 I Street, Suite 7-500
            Sacramento, CA 95814
24
            Federal Trade Commission, Western Region
25          Jeffery Klurfeld, Director
            901 Market Street, Suite 570
26          San Francisco, CA 94103
27
28 ///

18

1        Federal Trade Commission
         Jessica Rich, Esq.
2        Thomas Kane, Esq.
         601 New Jersey Ave NW
3        Washington, D.C. 20580

4        Consumer Financial Protection Bureau
         Gail Hillebrand, Esq., Associate Director
5        1700 G Street, NW
         Washington, D.C. 20552
6
         Office of the California Attorney General
7        Frances Grunder, Esq.
         Consumer Law Section
8        455 Golden Gate Avenue, Suite 11000
         San Francisco, CA 94102-7004
9
         Office of the Los Angeles County District Attorney
10       Consumer Protection Division
         201 North Figueroa Street, 12th Floor
11       Los Angeles, CA 90012

12       Office of the Sacramento County District Attorney
         Consumer Division
13       901 G Street
         Sacramento, CA 95814
14
         Office of the San Francisco County District Attorney
15       Consumer Unit
         732 Brannan Street
16       San Francisco, CA 94102

17       In forwarding this Memorandum Opinion and Decision to the

18  above offices and agencies, the court is not making any finding

19  that further investigation is required or ordering that any office

20  or agency proceed with an investigation.    The Memorandum Opinion

21  and Decision is forwarded for informational purposes  only to each

22  of these offices and agencies.

23       This Memorandum Opinion and Decision constitutes the court's

24  findings of fact and conclusions of law pursuant to Federal Rule of

25  Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 7052

26  and 9014.    The court shall issue an order consistent with this

27  Ruling.

28  Dated: May 14 , 2013
                                 RONALD H. SARGIS, Judge
                                 United States Bankruptcy Court

                                19

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

| | |
|---|---|
| Linda Allen<br>554 Stetson Dr<br>Oakdale, CA 95361 | Irma Edmonds<br>PO Box 3608<br>Pinedale, CA 93650 |
| Office of the U.S. Trustee<br>Robert T Matsui United States Courthouse<br>501 I Street , Room 7-500<br>Sacramento, CA 95814 | JPMorgan Chase Bank, N.A.<br>c/o Timothy J. Silverman<br>12651 High Bluff Dr #300<br>San Diego, CA 92130 |
| Federal Trade Commission, Western Region<br>Jeffery Klurfeld, Director<br>901 Market Street, Suite 570<br>San Francisco, CA 94103 | Federal Trade Commission<br>Jessica Rich, Esq.<br>Thomas Kane, Esq.<br>601 New Jersey Ave NW<br>Washington, D.C. 20580 |
| Consumer Financial Protection Bureau<br>Gail Hillebrand, Esq., Associate Director<br>1700 G Street, NW<br>Washington, D.C. 20552 | Office of the California Attorney General<br>Frances Grunder, Esq.<br>Consumer Law Section<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004 |
| Office of the Los Angeles County District Attorney<br>Consumer Protection Division<br>201 North Figueroa Street, 12th Floor<br>Los Angeles, CA 90012 | Office of the Sacramento<br>   County District Attorney<br>Consumer Division<br>901 G Street<br>Sacramento, CA 95814 |
| Office of the San Francisco<br>   County District Attorney<br>Consumer Unit<br>732 Brannan Street<br>San Francisco, CA 94102 | |